IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

_____

| | |
|---|---|
| DEBRA HO-SUE, *et al.*, | : |
|               Plaintiffs, | : |
| | : |
|          v. | :    Civil No. 5:20-cv-03639-JMG |
| | : |
| TRIPLE NET INVESTMENTS, XXII L.P., | : |
|               Defendant. | : |

_____

**MEMORANDUM OPINION**

**GALLAGHER, J.**                                                                                                    February 8, 2021

On March 5, 2019, Plaintiff Debra Ho-Sue slipped and fell on ice in the parking lot at work. Her employer, iQor Holdings US LLC ("iQor"), rented the premises from Defendant Triple Net Investments, XXII L.P. ("Triple Net"). Ho-Sue and her husband initiated this negligence action against Triple Net to recover damages sustained from her fall. Presently before the Court is Triple Net's motion for summary judgment.[1] For the reasons that follow, Triple Net's motion will be granted.

**I.     STANDARD OF REVIEW**

Summary judgment is only appropriate where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual dispute is considered "genuine" when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Physicians Healthsource, Inc. v. Cephalon, Inc.*, 954 F.3d 615, 618 (3d Cir. 2020) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

---

[1] Triple Net originally filed its motion for summary judgment on August 26, 2020, well before the end of the discovery deadline. ECF No. 7. At the parties' request, the Court held the motion in abeyance to allow them to engage in discovery related to the motion. Upon completion of that discovery, the parties filed supplemental briefs on November 30, 2020. ECF Nos. 14, 16. As such, the motion for summary judgment is now ready for review.

(1986)). A fact is considered "material" when it "might affect the outcome of the suit under the governing law." *Id.* (quoting *Anderson*, 477 U.S. at 248). All facts are viewed, and inferences drawn, in the light most favorable to the nonmoving party. *Id.*

At the summary judgment stage, the moving party has the initial burden of demonstrating an absence of a genuine dispute of a material fact. *Goldenstein v. Repossessors, Inc.*, 815 F.3d 142, 146 (3d Cir. 2016). If the nonmoving party fails to sufficiently "establish the existence of an essential element of its case on which it bears the burden of proof at trial," then "there is not a genuine dispute with respect to a material fact and thus the moving party is entitled to judgment as a matter of law." *Id.* (quoting *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 265 (3d Cir. 2014)).

## II.     DISCUSSION

To establish negligence under Pennsylvania law,[2] plaintiffs must prove that (1) the defendant owed them a duty of care, (2) that duty was breached, (3) the breach resulted in their injuries, and (4) they suffered an actual loss or damages. *Collins v. Phila. Suburban Development Corp.*, 179 A.3d 69, 73 (Pa. Super. 2018) (citing to *Merlini ex rel. Merlini v. Gallitzin Water Authority*, 980 A.2d 502, 506 (Pa. 2009)). A landlord out of possession generally owes no duty to third parties who are injured on the leased premises. *Jones v. Levin*, 940 A.2d 451, 454 (Pa. Super. 2007). The reason is that the law views a lease as "the equivalent of a sale of the land for the term of the lease." *Id.* Therefore, "liability is premised primarily on possession and control,

---

[2] This Court has diversity jurisdiction over the action: the parties are citizens of different states and the amount in controversy exceeds $75,000. *See* ECF No. 1, ¶¶ 12–18. "A federal court sitting in diversity must apply state substantive law and federal procedural law." *Chamberlain v. Giampapa*, 210 F.3d 154, 158 (3d Cir. 2000). The parties here agree that Pennsylvania law applies to this dispute. ECF No. 7, at 7–9 (Triple Net citing to Pennsylvania law); ECF No. 10, at 8–12 (Ho-Sue citing to Pennsylvania law).

and not merely [on] ownership." *Id.* (quoting *Deeter v. Dull Corp., Inc.*, 617 A.2d 336, 339 (Pa. Super. 1992)).

Pennsylvania courts, however, have recognized that the general rule for out-of-possession landlords is subject to several exceptions. *Henze v. Texaco Inc.*, 508 A.2d 1200, 1202 (Pa. Super. 1986)).

> A landlord out of possession may incur liability (1) if [the landlord] has reserved control over a defective portion of the demised premises; (2) if the demised premises are so dangerously constructed that the premises are a nuisance per se; (3) if the lessor has knowledge of a dangerous condition existing on the demised premises at the time of transferring possession and fails to disclose the condition to the lessee; (4) if the landlord leases the property for a purpose involving the admission of the public and he neglects to inspect for or repair dangerous conditions existing on the property before possession is transferred to the lessee; (5) if the lessor undertakes to repair the demised premises and negligently makes the repairs; or (6) if the lessor fails to make repairs after having been given notice of and a reasonable opportunity to remedy a dangerous condition existing on the leased premises.

*Id.* (citations omitted).

Triple Net argues that summary judgment is appropriate because it owes no legal duty to Ho-Sue: it is a landlord out of possession. *See* ECF No. 10, at 8–9. Rather, Triple Net contends that its tenant, iQor, is solely responsible for snow and ice removal in the parking lot. *Id.* For support, it cites to a provision in the lease that imposes the responsibility on the tenant to "[k]eep the exterior portions of the Property including, but not limited to, the parking lots, loading areas and driveways **free of snow and ice**." *Id.* at 6 (emphasis in original) (citing to section 7(g) of the lease attached as Exhibit D to the motion). In addition, the deposition testimony of Triple Net's representatives confirms that it had no obligation to remove snow and ice from the parking lot. ECF No. 14, at 1–2.

3

Ho-Sue does not dispute that the lease contains a provision imputing the responsibility of snow and ice removal on the tenant, not the landlord. ECF No. 16, at 5. But she insists that the provision is not case dispositive: there is a genuine issue as to whether one of the exceptions to the general rule of nonliability for out-of-possession landlords is applicable. *Id.* In particular, Ho-Sue argues that there is evidence that Triple Net reserved control over the defective portion of the premises. *Id.*

This evidence includes other sections of the lease and deposition testimony from two of Triple Net's representatives. *Id.* at 7. The relevant lease provisions gave Triple Net the authority to (1) inspect the property,[3] (2) promulgate rules and regulations for the upkeep of the building,[4] (3) make reasonable repairs,[5] and (3) perform maintenance (including snow and ice removal) if the tenant failed to perform its obligations.[6] *Id.*; *see also id.* at 1–2 (summarizing these provisions in statement of facts). The deposition testimony revealed that not only did Triple Net have the authority to inspect the property, but that it would in fact inspect the property "multiple" times during the year "in part to ensure that the tenant was performing maintenance properly."

---

[3] Section 10 of the lease authorizes the landlord to enter the premises to "inspect the Premises during business hours upon reasonable advance notice." ECF No.7, Ex. D § 10. Section 15(c) also permits the landlord to "inspect the Premises from time to time as it deems, in its sole opinion, necessary, and request that Tenant comply with the terms of this provision." *Id.* § 15(c).

[4] Section 7(c) of the lease states that the tenant will "[c]omply with the reasonable rules and regulations from time to time made by Landlord for the safety, care, upkeep and cleanliness of the Building and appurtenances of which it is a part." *See* ECF No.7, Ex. D § 7(c).

[5] In Section 9(b) of the lease, the tenant agrees not to "[m]ake any structural alterations, improvements or additions to the Building or Property without the written consent, not to be unreasonably withheld or delayed, of the Landlord." ECF No.7, Ex. D § 9(b). Similarly, section 10 permits the landlord to enter the premises "if Landlord shall so elect, for making reasonable alterations, improvements, or repairs to the Building or for any reasonable purpose in connection with the operation and maintenance of the Building." *Id.* § 10.

[6] Section 15(d) of the lease provides that if the tenant fails to perform its obligations concerning repairs and maintenance, including snow and ice removal, then the landlord may "after giving the appropriate written notice and cure period, perform on Tenant's behalf and recover the reasonable costs and expenses of said performance from Tenant upon demand." ECF No. 7, Ex. D § 15(d).

*Id.* at 7. Based on this, Ho-Sue argues that there is a genuine dispute as to whether Triple Net retained control over the property. *Id.*

After reviewing the parties' arguments, the Court concludes that summary judgment must be entered in favor of Triple Net. Ho-Sue does not refute that Triple Net was a landlord out of possession. Instead, she focuses on whether the reservation of control exception is applicable. However, she fails to proffer evidence that could reasonably support finding that Triple Net reserved control over the parking lot.

To start, Ho-Sue's argument that Triple Net reserved control based on certain lease provisions is unavailing. These lease provisions—that permitted Triple Net to perform maintenance (if the tenant failed to do it after written notice), promulgate rules for upkeep, make reasonable repairs, and require permission before making structural changes—on their own do not confer control of the parking lot to Triple Net.

Suggesting that these provisions create a genuine factual dispute, Ho-Sue compares her case to *Jones v. Levin*, 940 A.2d 451 (Pa. Super. 2007). Similar to this case, in *Jones*, the plaintiff also fell on snow and ice in a parking lot and sued the landlord, not tenant, of the premises. 940 A.2d at 452–53. There, the Pennsylvania Superior Court allowed the case to proceed past summary judgment in part because the court found that a lease provision requiring the landlord's authorization before structurally altering the parking lot created a genuine dispute as to whether the landlord retained control of the premises. *Id.* at 456. Importantly, unlike here, the plaintiff's injury was alleged to have been caused by "a depression or irregularity" in the parking lot that "allowed 'water run-off and snow and ice to build-up." *See Hymes v. Great Lakes Warehouse*, No. 11-248, 2014 WL 1022462, at *4 (E.D. Pa. March 17, 2014) (discussing the *Jones* case). As such, "structural changes would have been required to remedy the situation

and the tenant would not have been able to complete those repairs without the landlord's permission." *Id.* There is no evidence, here, that structural changes or the landlord's permission were needed to remove the snow and ice in the parking lot prior to Ho-Sue's fall. *See id.* Accordingly, the lease provisions cited by Ho-Sue do not suggest that Triple Net reserved control over the parking lot.

Neither does the fact that Triple Net had the authority to, and sometimes did, inspect the premises create a genuine dispute as to whether it reserved control of the parking lot. The testimony that Ho-Sue primarily relies on in making this argument was from the property manager for the premises at the time of the fall, Joanie Elekes. ECF No. 16, at 2. At her deposition, she testified that she would visit the premises "one to four times per year." *Id.* at 3 (citing to Elekes deposition transcript). One of the visits would be a formal inspection of the entire property, including the interior and exterior portions. *Id.* The other visits were more informal, where she would simply drive past the location to ensure that the tenant was "maintaining the property per the lease because they are responsible for all the repairs and maintenance solely." *Id.* (quoting Elekes deposition testimony).

While the frequency of a landlord's inspections has been found to be relevant in finding that a landlord reserved control over the premises, Ho-Sue's case is readily distinguishable. For example, Ho-Sue relies on a case where the plaintiff had slipped and fallen on "an accumulation of petroleum products present on the sidewalk of an Exxon station operated by one William Davis." *Juarbe v. City of Phila.*, 431 A.2d 1073, 1075 (Pa. Super. 1981). The plaintiff had sued the landlord of the property, Exxon, and the lower court granted summary judgment in its favor. *Id.* On appeal, the Superior Court reversed the lower court's decision in part because it determined that there was evidence that Exxon maintained control over the premises. *Id.* at

6

1080–81. The court pointed to Exxon's "frequent inspections" and its practice of "issuing orders to correct violations of lease terms, including those requiring that the property be kept in a neat and sanitary condition." *Id.* Notably, the evidence showed that "the slippery condition of the walk existed during a significant time period before [the plaintiff's] fall, and Exxon **inspections occurred during that time**." *Id.* at 1081 (emphasis added); *see also id.* at 1080 ("The record also contains copies of reports prepared by Exxon representatives evidencing such inspections on several occasions within ten to fourteen days prior to the Plaintiff's alleged fall.").

Even when viewing the Elekes deposition testimony in the light most favorable to Ho-Sue, Triple Net's one to four inspections per year cannot be characterized as "frequent," but more importantly, there is no evidence that the inspections occurred around the time of Ho-Sue's fall or when the snowy and icy conditions existed. Accordingly, there is no genuine dispute as to whether Triple Net retained control over the parking lot, and summary judgment is appropriate.

### III.   CONCLUSION

For the foregoing reasons, Triple Net's motion for summary judgment is granted. An appropriate order follows.

BY THE COURT:

*/s/ John M. Gallagher*
JOHN M. GALLAGHER
United States District Court Judge

7